THE HOMEOPATHIC MUTUAL LIFE INSURANCE COMPANY *vs.* CRANE and others.

1. The facts as proved, held not sufficient to support the defence of usury, but, if sufficient, held not to be stated with sufficient certainty in the answer.

2. Where a policy of life insurance is issued in good faith, at fair and customary rates, as part of an operation wherein a loan to the policy holder is the other part, the legality of the loan cannot be questioned, though it was dependent on the taking out of the policy. The transaction must be judged by the criterion of good or bad faith.

3. The bargain will not be held to be usurious because suspicious circumstances attach to it, nor because such bargains are susceptible of being made a mere cloak to cover usury. That the policy was taken out as a

Homeopathic Mutual Life Insurance Co. *v.* Crane.

cloak or device to evade the statute, must be established by cogent proof, direct or inferential.

4. The facts and circumstances of the usurious bargain must be particularly set forth in the answer.

*Mr. T. D. Hodges* and *Mr. Wm. H. Armour,* for complainants.

*Mr. Cross* and *Mr. Magie,* for defendants.

THE VICE-CHANCELLOR.

Part of the sum secured by the mortgage in this suit, was the first premium of an insurance policy issued by the complainants at the making of the mortgage loan, and upon the facts constituting this part of the transaction, the defence of usury is sought to be maintained. I think there are two reasons, one substantial and one technical, why payment of the mortgage cannot thus be avoided. *First,* the facts and circumstances, as disclosed by the proofs, do not support the defence ; and, *second,* if the facts and circumstances so disclosed, are sufficient to support it, they are not stated with sufficient certainty in the answer.

The mortgage is for $11,000, dated August 1st, 1872, and made by John R. Crane and wife to the complainants, a life insurance company of New York. The mortgagor resided in Elizabeth, in this state, where the mortgaged lands lie ; and in or about July, 1872, through his son, James P. Crane, then a law clerk in New York, applied to the complainants for a loan. The son negotiated with the officers of the company, and the loan was agreed to, provided the son became a policy holder. The policy on his life was for $8800. It was payable five years after date, if he should then be alive, or at his death, if he should die before the five years expired. The premium, payable every six months, was $1004.69. This premium was not unusual or excessive in amount. It was, and is, very nearly, if not exactly, the premium usually charged by companies for this well known description of policies. Upon this point there is no room for doubt. On

behalf of the complainants, the contention is, that the company had a right to prefer policy holders in making their loans ; that such was their practice ; that the son became a policy holder at his own suggestion and request, and in the policy received a full and fair equivalent for the sum of $1004.69, which was paid by the father, who understood and approved the arrangement. On behalf of the defendant, it is insisted that the issuing of the policy was a mere device to obtain interest on the loan at a higher rate than seven per cent. per annum, and the testimony of the son goes strongly to establish it. But the testimony of the son is directly contradicted by several witnesses, officers of the company, who explicitly and positively deny material statements made by him as to what was said in the interviews when the transaction was discussed and agreed on. The weight of testimony is against the view which he gives of it. The defence of usury must be made out by cogent proof. It must be clearly and conclusively shown that more than the lawful rate of interest was intentionally reserved. The usury will not be permitted to escape the legal penalties against it under cover of a fictitious or pretended business operation, designed merely to be a cloak to disguise the truth and substance of the bargain. But that the operation was, in fact, a pretence, and not a reality, must be proved, either directly or by inference, so as to leave no reasonable misgivings in the mind of the judge who is called upon to declare it to have been so. It will not be so declared because suspicious circumstances attach to it, nor because operations of that character are susceptible of being used for this illegal and reprehensible purpose.

In the present case, the taking out of the policy was made a condition to the procurement of the loan. This circumstance is not denied by the complainants,. but whatever criticism it may expose their business methods to,.it can hardly be contended, by itself, to make the bargain. a usurious one. The circumstance that the policy was dated back to the 8th of the preceding April, is objectionable, and is much relied on for the defendants. It was not delivered, till the early part of

August, at the delivery of the mortgage, so that nearly four months had gone of the six, at the end of which the second premium would be due. This circumstance, however, would not necessarily be in the interest of, or to the advantage of, the company. It might, or might not be, a cloak to cover usury. Policies of life insurance, as the evidence in this case explicitly proves, are sometimes dated back in the interest of, and for the pecuniary advantage of, the insured. If the policy now in question had been continued by the insured, and not allowed to lapse, the antedating of it, so as to bring the premium down to the lower rate for a younger age, and so also as to save the interest for four months on the premium, would have been against the company and in favor of Crane. It was the latter's fault or choice that it has not been so continued. But if, on the other hand, the understanding or agreement, expressed or implied between the parties, was that the policy was not to be kept up, but was to lapse at the end of the first premium period, then the circumstance of the antedating was an appropriate part of the plan to take more than lawful interest. The evidence does not warrant the conclusion that it was so understood or agreed. I think this feature of the case is clearly open to suspicion, and is one not to be commended. But it is consistent with a fair and just bargain on the company's part, as well as with a usurious one. The testimony is explanatory of it, especially that of the expert, Mr. Fachler. The calculations made on the part of the defendants, with a view to show that the premium charged was excessive, are fallacious. They do not allow for dividends expected to arise yearly from the premiums, nor for the value of the indemnity against death, during the five years covered by the policy.

I am satisfied, upon a careful consideration of the evidence in this case, that usury is not proved by it. Where a policy is issued in good faith, at the fair and customary rates, as part of a general operation, wherein a loan to the policy holder is the other part, I see no reason to question the legality of the loan, even though it depends on the taking out of the

policy. It is a question of bona fides, and must be so dealt with. The expediency of it as a business transaction is one thing ; the legality of it is another thing.

The second, and technical difficulty, in the way of this defence is, that it is not set forth with requisite legal certainty in the answer. The rule as to this, is expressed by Justice Depue, in the Court of Appeals, in *Taylor* v. *Morris*, 7 *C. E. Green* 612. "In setting up," he says, "a defence of usury in a suit in chancery, the defendant must, in his answer, as in a plea of usury in an action at law, set out the particular facts and circumstances of the supposed usurious agreement, that the court may see that the agreement was in violation of the statute." The authorities referred to in his opinion are to the same effect. In the present case, the particular facts and circumstances of the alleged usurious agreement are altogether omitted in the answer. No hint is given of them. The allegations of the answer do not, in the remotest way, suggest the facts and circumstances intended to be proved, and the complainants are in no way apprised by the answer, of the facts necessary to be met by them in resisting the defence. There is a variance between the allegations and the proofs. The answer avers that, "it was agreed that said complainants should reserve and take, and said complainants did reserve and take, for the said sum of $11,000, loaned for one year, the sum of $1004.69, as a bonus, besides and in addition to the sum of seven per cent. per annum, reserved and taken, as mentioned in the condition of said bond and mortgage, and and that said sum of $1004.69 was actually reserved, taken and kept back by said complainants out of $11,000, besides the said interest, and was so paid by said John R. Crane to said complainants, and that, by said laws of said state of New York (in which state, the answer avers, the contract was made,) such contract, and the said bond and mortgage given therefor, were, and are, wholly usurious and void, and of no effect or force." If the proofs corresponded with the allegations, the technical difficulty, as to the pleading, would be wanting. If $1004.69 had been kept back and reserved, as

the answer avers, and nothing given in return for it, the variance would not exist. But no such bargain was made. A marketable and valuable commodity was given in exchange for it. If a controversy can fairly exist upon the facts as disclosed by the evidence, it is a controversy not indicated by the answer. It is not fairly presented by the answer, and should, therefore, be excluded from the defence.

In this view of the case, it is unnecessary to decide whether the mortgage contract is amenable to the laws of New York, or to the laws of New Jersey.